UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **NORA PINEDA**<br>10506 Westlake Drive,<br>Apt. 101<br>Bethesda, MD 20817<br><br>    **Plaintiff,**<br><br>    v.<br><br>**LERNER CORPORATION**<br>2000 Tower Oaks Boulevard<br>Eighth Floor<br>Rockville, MD 20852,<br><br>**Serve: Arthur N. Fuccillo**<br>2000 Tower Oaks Boulevard<br>Eighth Floor<br>Rockville, MD 20852.<br><br>    **Defendant.** | Case No.: 8:21-CV-1086<br>**JURY TRIAL DEMANDED** |

## CIVIL COMPLAINT FOR MONETARY AND EQUITABLE RELIEF

The plaintiff Nora Pineda, by and through her undersigned counsel, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Family Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq*. ("FMLA"), the Maryland Fair Employment Practices Act, Md. Code Ann. §§ 20-601 *et seq*. ("FEPA"), and the Montgomery County Human Rights Law, Montgomery County Code § 27-8, against her former employer, the Defendant Lerner Corporation ("Lerner"), as follows:

## PARTIES

1. Plaintiff, Nora Pineda, is a resident of Maryland, residing at 10506 Westlake Drive, Apt. 101, Bethesda, Montgomery County, Maryland 20817.

1

2. Defendant, Lerner Corporation, is a Maryland corporation with its principal place of business located at 2000 Tower Oaks Boulevard, Eighth Floor, Rockville, Montgomery County, Maryland, 20852.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331.

4. Venue is proper in this district because Lerner conducts business in the division in which the Court sits, and because the events, acts, and omissions giving rise to the Complaint occurred in this division.

## ADMINISTRATIVE EXHAUSTION

5. On or about April 22, 2019, Ms. Pineda filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") that cross filed with the Maryland Commission on Civil Rights.

6. On or about February 5, 2021, the EEOC issued Ms. Pineda a Notice of Right to Sue and this lawsuit was filed within ninety-days of receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

7. Ms. Pineda began working for Lerner in November 2011 in Accounts Payable.

8. During the seven years Ms. Pineda worked with Lerner, Ms. Pineda only had two annual reviews. Her first review was in 2014 and her second was on or about November 4, 2016. Both were satisfactory.

9. Ms. Pineda is a practicing Jehovah's Witness.

10. As a Jehovah's Witnesses, its is Ms. Pineda's religious practice to not celebrate birthdays or other holidays.

11. Lerner regularly celebrated office birthdays, including circulating birthday cards, bringing in food to celebrate birthdays, or arranging cubicle or office decorations.

12. Throughout her seven-year employment with Lerner, Ms. Pineda politely declined to participate in birthday-related activities, invoking her religious beliefs.

13. Ms. Pineda's religion, and religious beliefs, were known to her  her supervisors Amie Root, Supervisor, Developing Accounting, Homebuilding, and Diane Finnblade, Senior Manager, Development and Construction, Finance, who regularly participated and organized birthday-related activities.

14. In or about March 2, 2018, Ms. Pineda suffered a severe concussion. Shortly thereafter, Ms. Pineda took leave from work to recover from it.

15. On or about March 14, 2018, Ms. Pineda returned to work and provided Ms. Root with medical documentation regarding her injury.

16. On or about March 30, 2018, Ms. Pineda emailed Ms. Root regarding a leave request that she made, copying Ms. Finnblade. In response, Ms. Finnblade scrutinized her request for leave.

17. On or about April 4, 2018, Ms. Pineda emailed Ms. Root explaining that her physician recommended she seek out a concussion therapist. Ms. Root responded by questioning Ms. Pineda about why she needed to seek therapy for her injury and referring to her concussion in quotation marks.

18. Ms. Pineda believed she was being harassed so on or about April 9, 2018, she verbally requested to meet with Pat May, Lerner's Counsel, to discuss the negative treatment she was experiencing from Ms. Finnblade and Ms. Root related to her injury and request to take medical leave.

19. On or about April 16, 2018, Ms. Pineda emailed Mr. May to discuss her complaints about the negative treatment she was experiencing. Later that day, Ms. Pineda met with Mr. May and explained that she was experiencing issues with Ms. Finnblade and Ms. Root as it relates to her recent concussion, including pushback regarding the time that she required to take time off. In response, Mr. May explained he would speak with Ms. Finnblade and Ms. Root and instructed Ms. Pineda to submit a request for FMLA.

20. On or about May 2, 2018, after Ms. Pineda began therapy for her concussion, Ms. Pineda submitted her FMLA request to Lerner.

21. On or about May 2, 2018, Ms. Finnblade approached Ms. Pineda's cubicle with a birthday card for Ms. Root. Ms. Finnblade asked that Ms. Pineda sign the birthday card. Ms. Pineda politely declined, explaining that, as she knows, celebrating birthdays was contrary to her religious beliefs and practices. Ms. Pineda added that she explained this to Ms. Finnblade in the past. In response, Ms. Finnblade questioned Ms. Pineda about her beliefs and whether she celebrated her son's birthday. Ms. Pineda again reiterated that celebrating birthdays violated her religious beliefs. Ms. Finnblade stormed off in response.

22. Days later, Ms. Pineda spoke with her teammate, Sonia Lyne, who mentioned that Ms. Finnblade and Ms. Root had a separate discussion without Ms. Pineda present about Ms. Pineda's religious beliefs.

23. On or about May 24, 2018, Ms. Finnblade and Laura Koehler, Director, Finance, asked to meet with Ms. Pineda. During the meeting, Ms. Finnblade and Ms. Koehler requested that Ms. Pineda detail the extent of her concussive injuries and her medical appointments. Then, Ms. Finnblade and Ms. Koehler criticized Ms. Pineda's performance, complaining, for the first

time, that Ms. Pineda may not be suitable for the position she has held for the previous seven years.

24. The following day, Ms. Pineda requested another meeting with Mr. May to discuss the meeting with Ms. Finnblade and Ms. Koehler. Ms. Pineda complained that after she met with him on April 16, 2018, to complain about her supervisors' treatment related to FMLA, things got worse.

25. On or about June 1, 2018, Ms. Root called Ms. Pineda for an unscheduled annual review with Ms. Finnblade with little more than ten minutes notice. Ms. Root and Ms. Finnblade scheduled this meeting with just twenty minutes remaining before Ms. Pineda was scheduled to leave for a concussion therapy appointment. Ms. Root and Ms. Finnblade provided Ms. Pineda with documentation to sign. When Ms. Pineda attempted to read it, Ms. Finnblade protested and instructed her not to read it and to just sign it. Ms. Pineda refused.

26. On or about June 4, 2018, Ms. Pineda requested to meet with Mr. May to discuss the unexpected annual review with Ms. Root and Ms. Finnblade.

27. On or about June 5, 2018, Ms. Pineda met with Mr. May and complained about the circumstances surrounding the unexpected review meeting Ms. Pineda told him she thought this "review" departed from regular procedure and added that she felt that Ms. Root and Ms. Finnblade's actions constituted discrimination, retaliation, and harassment.

28. For the next several weeks, Ms. Finnblade commented that she was "retraining" Ms. Pineda and began to treat her as if she were a new employee with no knowledge of the work that Ms. Pineda had successfully performed for the past seven years with Lerner.

29. On or about June 27, 2018, Ms. Pineda met with Mr. May and complained about Ms. Finnblade's treatment, telling him that she felt that it was harassment and retaliation.

30. Over the course of the next several months, Ms. Finnblade and Ms. Root continued their unwarranted scrutiny of Ms. Pineda's performance.

31. On or about November 6, 2018, Ms. Root again asked that Ms. Pineda sign Ms. Finnblade's birthday card. Ms. Pineda declined in accordance with her religious beliefs.

32. Two days later, on or about November 8, 2018, Ms. Finnblade and Ms. Root held an annual review meeting with Ms. Pineda and stated that Ms. Pineda should consider looking for another job. Shortly thereafter, Ms. Pineda requested to meet with Mr. May to discuss the review but that discussion never occurred.

33. On or about November 9, 2018, Ms. Pineda was suffering from headaches, a residual effect of her concussion, and requested to be excused for that day's weekly team meeting. Ms. Finnblade had already excused two employees from attending that meeting—Ms. Root and Leigh Ann, Contract Administrator. Nevertheless, Ms. Finnblade told Ms. Pineda that if she did not attend the meeting, she needed to leave for the day.

34. An hour later, Mr. May called Ms. Pineda into her office with Ms. Koehler. During the meeting, Mr. May accused Ms. Pineda of insubordination, demanded that Ms. Pineda leave the building.

35. Mr. May suspended Ms. Pineda for one and a half days for alleged insubordination.

36. From on or about November 13, 2018, through November 14, 2018, Ms. Pineda took additional leave because of her increasingly painful headaches.

37. On or about November 15, 2018, Ms. Pineda returned to work and provided a letter from her physician excusing her absence.

38. Later that day, Mr. May asked that Ms. Pineda meet with him. During the meeting, Ms. Koehler handed Ms. Pineda a letter of separation. Ms. Pineda asked for a reason for her termination, but Mr. May refused.

39. As a result of Lerner's illegal discrimination against Ms. Pineda, she has suffered monetary damages, including emotional distress, mental anguish, lost pay, lost benefits and harm to her professional reputation.

40. Defendant has acted with malice warranting an award of punitive damages.

## COUNT I
**Title VII of the Civil Rights Act of 1964 – Wrongful Termination and Disparate Treatment 42 U.S.C. § 2000e *et seq*.**

41. Ms. Pineda incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

42. Ms. Pineda was an employee within the meaning of 42 U.S.C. § 2000e(f).

43. Lerner is an employer within the meaning of the 42 U.S.C. § 2000e(b).

44. Ms. Pineda is a member of a protected class because she is a Jehovah's Witness.

45. Ms. Pineda suffered an adverse employment action when on or about November 15, 2018, Lerner terminated Ms. Pineda's employment.

46. Ms. Pineda was performing her job duties at a level that met Lerner's legitimate expectations at the time of her termination.

47. Ms. Pineda was treated differently than similarly situated employees who were not Jehovah's Witnesses.

48. Upon information and belief, Ms. Pineda's position remained open or was filled by a person who is a Jehovah's Witnesses.

49. The reasons given for terminating Ms. Pineda's employment are false and pretext. The real reason Ms. Pineda was fired was because of her religion and religious beliefs.

## COUNT II
### Title VII of the Civil Rights Act of 1964 – Retaliation
### 42 U.S.C. § 2000e *et seq*.

50. Ms. Pineda incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

51. Ms. Pineda was an employee within the meaning of 42 U.S.C. § 2000e(f).

52. Lerner is an employer within the meaning of the 42 U.S.C. § 2000e(b).

53. Ms. Pineda engaged in protected activity when she complained to Mr. May that Ms. Root and Ms. Finnblade's actions constituted discrimination, retaliation, and harassment, and opposed what she in reasonable good faith believed to have been unlawful workplace discrimination against her on the basis of her religion and religious beliefs.

54. Ms. Pineda suffered an adverse employment action when on or about November 15, 2018, Lerner terminated Ms. Pineda's employment.

55. There was a causal connection between the protected activity and the adverse employment action because of the close temporal proximity between her protected activity and Ms. Pineda's termination.

Lerner's stated reason for terminating Ms. Pineda's employment is pretext for unlawful retaliation.  . **COUNT III**
### Family Medical Leave Act – Retaliation and Interference
### 29 U.S.C. § 2601 *et seq*.

56. Ms. Pineda repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

57. Ms. Pineda is an "eligible employee" as defined by 29 U.S.C. § 2611(2)(A).

58. Lerner is an "employer" as defined by 29 U.S.C. § 2611(4)(A)(i).

8

59. Ms. Pineda engaged in protected activity under the FMLA when on or about May 2, 2018, Ms. Pineda submitted her application for FMLA to Lerner.

60. Lerner terminated Ms. Pineda's employment in retaliation for engaging in protected activity and taking FMLA protected leave.

61. There was a causal link between the protected activity and the adverse employment action because of the close temporal proximity between her protected activity and Ms. Pineda's termination from her employment.

62. As a result, Ms. Pineda suffered loss of wages (back and front pay), employment benefits, and other compensation in an amount to be determined at trial.

63. Lerner's actions were willful, not in good faith, and Lerner did not have reasonable grounds for believing its actions did not violate the FMLA. As such, Ms. Pineda is entitled to an additional amount as liquidated damages equal to the sum of the lost pay.

64. Lerner's interference with Ms. Pineda's FMLA rights also entitles Ms. Pineda to an award of reasonable attorney's fees and costs.

## COUNT IV
**Discrimination in violation of FEPA**
**Md. Code Ann. §§ 20-601** *et seq.*

65. Ms. Pineda repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

66. Lerner discriminated against Ms. Pineda by terminating her employment because of her religion and religious beliefs.

67. By and through its conduct, Lerner discriminated against Ms. Pineda because of her religion and religious beliefs in violation of Md. Code. Ann. §§ 20-601 *et seq*.

## COUNT V
**Retaliation in violation of FEPA**

**Md. Code Ann. §§ 20-601** *et seq.*

68. Ms. Pineda repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

69. Lerner unlawfully retaliated against Ms. Pineda when it terminated her employment because she engaged in protected activities.

70. By and through its conduct, Lerner discriminated against Ms. Pineda in retaliation for engaging in protected activities in violation of FEPA.

## COUNT VI
**Religious Discrimination in violation of Montgomery County Human Rights Law Montgomery County Code § 27-8.**

71. Ms. Pineda repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

72. Lerner discriminated against Ms. Pineda by terminating her employment because of her religion and religious beliefs.

73. By and through its conduct, Lerner discriminated against Ms. Pineda because of her religion and religious beliefs in violation of Montgomery County Code § 27-8.

## COUNT VII
**Retaliation in violation of Montgomery County Human Rights Law Montgomery County Code § 27-8.**

74. Ms. Pineda repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

75. Lerner retaliated against Ms. Pineda when it terminated her employment because she engaged in protected activities.

76. By and through its conduct, Lerner discriminated against Ms. Pineda in retaliation for engaging in protected activities in violation of the Montgomery County Human Rights Law.

77. As a result of Lerner's unlawful actions, Ms. Pineda has suffered significant damages, including but not limited to, pain and suffering, emotional distress, lost wages and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on all Counts and award Plaintiff the following:

a. Lost pay/benefits and reinstatement/front pay/benefits;

b. Compensatory damages for pain and suffering in the amount of $500,000 or such other amount as is awarded by a jury;

c. Punitive damages on each non-FMLA count in the amount of $500,000 or such other amount as is awarded by the jury;

d. Liquidated damages on each of the FMLA counts;

e. Reasonable attorney's fees and litigation costs;

f. Tax on any award;

g. Any other relief as the Court deems fair and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

Dated: May 4, 2021

Respectfully submitted,

/s/Daniel Trujillo Esmeral
Daniel Trujillo Esmeral [21615]
Alan Lescht & Associates, P.C.
1825 K Street NW, Suite 750
Washington DC, 20006
T: (202) 463-4036
F: (202) 463-6067
Daniel.trujilloesmeral@leschtlaw.com
*Attorneys for Plaintiff*