IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NORA PINEDA, | * | |
| Plaintiff, | * | |
| v. | * | Case No. TJS-21-1086 |
| LERNER CORPORATION, | * | |
| Defendant. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Now pending before the Court is Defendant Lerner Corporation's ("Lerner") Motion to Dismiss ("Motion") (ECF No. 19).[1] Having considered the submissions of the parties (ECF Nos. 19, 20 & 21), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

**I.     Background**

Plaintiff Nora Pineda ("Ms. Pineda") filed this lawsuit against Lerner pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VI"); the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the Maryland Fair Employment Practices Act, Md. Code, State Gov't § 20-601 *et seq.* ("FEPA"), and the Montgomery County Human Rights Law, Montgomery County Code § 27-8.[2] ECF No. 18. In her Amended Complaint, she alleges that

---

[1] This case has been referred to me for all proceedings by the consent of the parties, pursuant to 28 U.S.C. § 636(c). ECF No. 16. The case was previously assigned to Judge Day but was reassigned to me on February 14, 2022.

[2] Lerner previously filed a motion to dismiss Ms. Pineda's original complaint. ECF No. 12. Because Ms. Pineda has filed an amended complaint, Lerner's earlier motion to dismiss will be denied as moot. *See, e.g., Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021); *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001).

she was terminated from her employment with Lerner because of religious discrimination and in retaliation for engaging in protected activity under Title VII. *See id.* She also alleges that Lerner interfered with her FMLA rights and retaliated against her for engaging in activity protected by the FMLA. *See id.* She raises similar claims under analogous state law provisions. *See id.*

In its Motion, Lerner argues that Ms. Pineda's claims of religious-based discrimination under Title VII (Count I), the FEPA (Count IV), and the Montgomery County Human Rights Law (Count VI) should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the claims are implausible. *See* ECF No. 19-1 at 2-6. Lerner argues that the retaliation claims brought under Title VII (Count II), the FEPA (Count V), and the Montgomery County Human Rights Law (Count VII) should be dismissed on the same basis. *Id.* at 6-9. Finally, Lerner argues that Ms. Pineda's FMLA claims (Counts III) should be dismissed because the Amended Complaint does not contain allegations sufficient to state claims for FMLA interference or retaliation. *Id.* at 9-12. Ms. Pineda opposes the Motion. ECF No. 20.

**II.     Legal Standard**

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled

allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

"Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### III.  Discussion

#### A.  Factual Allegations of the Amended Complaint

The Court accepts as true the factual allegations of Ms. Pineda's Amended Complaint. *See, e.g.*, *Iqbal*, 556 U.S. at 663. The thrust of Ms. Pineda's claims is that Lerner discriminated against her because of her religion and that it retaliated against her for complaining of religious discrimination and for exercising her rights under the FMLA.

Ms. Pineda was employed by Lerner in its accounts payable department from November 2011 until she was terminated on November 15, 2018. ECF No. 18 ¶¶ 7, 49-50. She is a practicing Jehovah's Witness and, as part of her religious observance, does not celebrate birthdays or holidays. ECF No. 18 ¶¶ 9-10. At all relevant times, Ms. Pineda was the only Jehovah's Witness employed by Lerner. *Id.* ¶ 11. While Lerner employees regularly celebrated office birthdays, Ms. Pineda always abstained from the celebrations because of her religion. *Id.* ¶¶ 12-13. Ms. Pineda

told her supervisors (Diane Finnblade and Amie Root) that she didn't celebrate birthdays or sign birthday cards for religious reasons. *Id.* ¶ 14.

On March 2, 2018, Ms. Pineda suffered a severe concussion and took leave from work to recover. *Id.* ¶ 15. On March 14, 2018, and April 4, 2018, after Ms. Pineda returned to work, her supervisors scrutinized the requests she made for leave to seek therapy for her concussion, and Ms. Root downplayed the seriousness of Ms. Pineda's medical condition. *Id.* ¶¶ 17, 18. Ms. Pineda complained to Lerner's counsel "about the negative treatment she was experiencing" related to Ms. Finnblade and Ms. Root's treatment of her requests for time off to treat her concussion. *Id.* ¶ 20. Lerner's counsel "explained he would speak to Ms. Finnblade and Ms. Root and instructed Ms. Pineda to submit a request for FMLA" leave. *Id.*

On May 2, 2018, Ms. Pineda submitted an FMLA leave request to Lerner's human resources department. *Id.* ¶ 21. On the same day, Ms. Finnblade came to Ms. Pineda's cubicle with a birthday card for Ms. Root and asked Ms. Pineda to sign it. *Id.* ¶ 22. At the time, Ms. Finnblade was aware that Ms. Pineda's religious observance prohibited her from birthday celebrations, including signing birthday cards. *Id.* When Ms. Pineda declined to sign the card and explained, again, her religious practice, Ms. Finnblade questioned her about her religious beliefs and "stormed off." *Id.*

Days later, Ms. Pineda learned that Ms. Finnblade and Ms. Root had separately discussed Ms. Pineda's religious practice with a coworker, Sonia Lyne. *Id.* ¶ 23. Ms. Lyne told Ms. Pineda that Ms. Finnblade and Ms. Root "questioned Ms. Pineda's religious beliefs and expressed concern that [she] refused to celebrate birthdays in the workplace." *Id.* Ms. Finnblade and Ms. Root never "expressed concern or scrutinized the religious beliefs or practices of any of Ms. Pineda's coworkers who were not practicing Jehovah's Witnesses." *Id.* ¶ 25. Soon thereafter, "Ms.

4

Finnblade and Ms. Root began to allege that Ms. Pineda had performance issues and began scrutinizing her work to support their allegations." *Id.* ¶ 24.

On May 24, 2018, less than one month after Ms. Pineda submitted her FMLA leave request and refused to sign the birthday card for Ms. Root, Ms. Pineda was summoned to a meeting with Ms. Finnblade and Laura Koehler, Lerner's Director of Finance. *Id.* ¶ 26. During the meeting, Ms. Finnblade and Ms. Koehler requested additional details about Ms. Pineda's concussion and medical appointments, and complained that Ms. Pineda used FMLA leave on Fridays too often. *Id.* They told Ms. Pineda to use her FMLA leave to attend her concussion therapy appointments during her lunch break. *Id.* They also directed Ms. Pineda "to submit revised documentation from her doctor shortening her request for twelve weeks of FMLA [leave] to a lesser amount." *Id.* Finally, Ms. Finnblade and Ms. Koehler criticized Ms. Pineda's performance and complained, for the first time during Ms. Pineda's tenure at Lerner, that she "may not be suitable for the position she [had] held for the previous seven years." *Id.* ¶ 27.

The next day, May 25, 2018, Ms. Pineda complained to Lerner's counsel about her treatment by her supervisors, including the meeting with Ms. Finnblade and Ms. Koehler. *Id.* ¶ 28. A few days later, on June 1, 2018, "Ms. Root called Ms. Pineda for an unscheduled performance review with Ms. Finnblade with little more than ten minutes notice." *Id.* ¶ 29. Ms. Pineda informed Ms. Finnblade and Ms. Root that she had a previously scheduled concussion therapy appointment (of which they were aware) and that she would be late for her appointment if required to attend the impromptu performance review. *Id.* Ms. Finnblade and Ms. Root told Ms. Pineda that she had to attend the meeting, "thereby preventing Ms. Pineda from using FMLA leave to attend the medical appointment that day." *Id.* at 29. During the June 1 performance review, Ms. Finnblade and Ms. Root "provided Ms. Pineda with documentation," but then "snatched the document from her" after

5

she refused to sign it until she had read it. *Id.* ¶ 30. Ms. Finnblade and Ms. Root did not conduct similar performance reviews of Ms. Pineda's coworkers who were not practicing Jehovah's Witnesses or who did not "invoke or use FMLA." *Id.* ¶ 31.

On June 5, 2018, Ms. Pineda complained about the unexpected performance review to Lerner's counsel. *Id.* ¶ 33. She told him that the review was a departure from the regular procedure in several ways: (1) it was scheduled at a moment's notice, (2) Ms. Finnblade and Ms. Root only provided "unsubstantiated negative feedback," (3) they would not consider Ms. Pineda's responses to the feedback, and (4) they tried to make Ms. Pineda sign a document without allowing her to read it. *Id.* Ms. Pineda reiterated her concerns that Ms. Finnblade and Ms. Root were harassing and discriminating against her because of her religious beliefs and her use of FMLA leave. *Id.* ¶ 34.

After Ms. Pineda's June 5 meeting with Lerner's counsel, Ms. Finnblade told Ms. Pineda that she was "retraining" her and "began to treat her as if she were a new employee with no knowledge of the work that [she] had successfully performed for the past seven years with Lerner." *Id.* ¶ 35. Ms. Pineda complained of this treatment to Lerner's counsel on June 27, 2018. *Id.* ¶ 36. In the following months, Ms. Pineda continued to perceive that she was being mistreated by Ms. Finnblade and Ms. Root. *Id.* ¶ 37.

On November 6, 2018, Ms. Root approached Ms. Pineda and asked her to sign Ms. Finnblade's birthday card. *Id.* ¶ 38. Ms. Pineda declined. *Id.* Ms. Root knew that Ms. Pineda's religious practice prohibited her from celebrating birthdays and signing birthday cards. *Id.* Two days later, on November 8, 2018, Ms. Finnblade and Ms. Root held another annual review meeting with Ms. Pineda. *Id.* ¶ 40. They told her she should look for another job. *Id.*

The next day, November 9, 2018, Ms. Pineda requested to be excluded from the weekly team meeting because she was suffering from a concussion-related headache. *Id.* ¶ 42. Ms. Pineda

was told that she could either attend the weekly meeting or use her FMLA leave and depart the office for the day. *Id.* ¶ 45. Other employees, neither of whom were using FMLA leave or were practicing Jehovah's Witnesses, were excused from the meeting and were not required to leave Lerner's office for the day. Id. ¶¶ 43-45. It appears from the Amended Complaint that Ms. Pineda ignored the directive of her supervisor and chose to skip the meeting and stay at the office. *See id.* Later that day, Lerner's counsel called Ms. Pineda into his office to meet with Ms. Koehler. *Id.* ¶ 46. They accused Ms. Pineda of insubordination, directed her to leave the building, and suspended her for one and a half days. *Id.*

Ms. Pineda did not return to work until November 15, 2018. *Id.* ¶ 49. It's unclear whether Lerner was closed on November 12, 2018, for Veterans Day. It's also unclear when Ms. Pineda was supposed to return to work after her suspension. In any event, Ms. Pineda suffered from painful headaches on November 13 and 14, 2018, and did not report to work on those days. *Id.* ¶ 48. When she returned to work on November 15, 2018, Ms. Pineda provided a doctor's note excusing her absence. *Id.* ¶ 49. Later that day, Ms. Koehler handed Ms. Pineda a Notice of Employee Separation, which terminated her from employment with Lerner. *Id.* ¶ 50; ECF No. 18-1. The Notice of Employee Separation states that Lerner terminated Ms. Pineda because of a "business decision." ECF No. 18-1. Ms. Pineda asked for an explanation for her termination but Lerner's counsel refused to explain. ECF No. 18 ¶ 50.

    **B.**    **Plaintiff's Claims**

        **1.**    **Religious Discrimination Claims**

Lerner argues that Ms. Pineda's religious discrimination claims should be dismissed because "no factual assertions support the conclusory legal allegations." ECF No. 19-1 at 2. Under

Title VII,[3] it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Although a plaintiff "need not plead facts sufficient to establish a prima facie case of [religious] discrimination to survive a motion to dismiss," the more stringent pleading standard established in *Iqbal* and *Twombly* still applies. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). As such, the Court is guided by the elements of a prima facie claim "to gauge the adequacy of the factual allegations in terms of plausibility." *Prosa v. Austin*, No. ELH-20-3015, 2022 WL 394465, at *24 (D. Md. Feb. 8, 2022). To state a prima facie claim of religious discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) more favorable treatment of someone outside the protected class with comparable qualifications. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

The Court rejects Lerner's argument regarding the religious discrimination claims. In her Amended Complaint, Ms. Pineda alleges that her supervisors asked her to participate in office birthday celebrations on at least two occasions. Ms. Pineda's supervisors knew that she did not celebrate birthdays because of her religion but they still expressed confusion and exasperation over her refusal to celebrate office birthdays and sign cards. They also gossiped about Ms. Pineda to her colleague. And on two occasions, Ms. Pineda was subjected to negative annual reviews within

---

[3] The analysis is the same for the state-law claims. *See, e.g.*, *DeRichelieu v. Johns Hopkins Univ.*, No. ELH-21-1953, 2021 WL 6113671, at *8 (D. Md. Dec. 23, 2021) (explaining that the FEPA is the "state law analogue of Title VII"); *Chughtai v. Kaiser Permanente*, No. PX-15-2963, 2018 WL 3049198, at *4 (D. Md. June 20, 2018) (explaining that employment discrimination claims brought under Montgomery County law are evaluated the same way as claims brought under federal law).

days of refusing to participate in birthday celebrations. Ms. Pineda alleges that Lerner's religious discrimination ultimately resulted in her termination. These allegations are more than "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Lerner suggests that there are reasons the Court should not believe that any adverse actions Ms. Pineda suffered were because of religious discrimination. According to Lerner, it would make little sense for Ms. Pineda's supervisors to engage in religious discrimination in 2018 when they had not done so in the earlier years of Ms. Pineda's employment. ECF No. 19-1 at 5. And Lerner argues that Ms. Pineda's allegation that "two adult women were so incensed by Plaintiff's refusal to sign two birthday cards that it caused them to manufacture fault in Plaintiff's work performance" is "simply not 'plausible.'" ECF No. 19-1 at 4. Lerner cites the case of *Wright v. Koniag Servs., Inc.*, 855 F. Supp. 2d 505, 509 (D. Md. 2012), where the Court dismissed a complaint as implausible under similar factual circumstances.

The factual allegations regarding religious discrimination are more substantial here than in *Wright*. Ms. Pineda alleges that on at least two occasions she refused to participate in office birthday celebrations. Each time, within days or weeks of her refusal, her work performance was criticized. The temporal proximity between Ms. Pineda's refusal to celebrate office birthdays and her supervisors' increased scrutiny of her work performance (and ultimately Lerner's termination of Ms. Pineda) suggests a plausible causal relationship. In addition, Ms. Pineda alleges that her supervisors questioned Ms. Pineda's religious beliefs and complained about her refusal to celebrate office birthdays to a coworker. If true, the comments of Ms. Pineda's supervisors are further evidence of Lerner's discriminatory animus.

Ms. Pineda's religious discrimination claims may not be very strong, and it may be unlikely that she will recover. But the claims pass muster under *Iqbal* and *Twombly*'s plausibility standard.

Even if it is improbable that Ms. Pineda will succeed on her claims, it is still plausible that Lerner discriminated against Ms. Pineda because of her religion. Accordingly, Lerner's Motion is denied as to the religious discrimination claims.

### 2. Retaliation Claims

Lerner argues that Ms. Pineda's retaliation claims should be dismissed. ECF No. 19-1 at 6- 9. Title VII bars employers from retaliating against an employee's protected activity. 42 U.S.C. § 2000e-3. To state a prima facie claim of retaliation, a plaintiff must allege she engaged in a protected activity, that the employer acted adversely against her, and that the protected activity was causally connected to the employer's adverse action. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

Ms. Pineda alleges that she engaged in protected activity when she complained to Lerner's counsel on June 5, 2018, that her supervisors had been discriminating against her because of her religion. ECF No. 18 ¶ 33, 34. After this meeting, Ms. Pineda was subjected to a period of "retraining," where Ms. Finnblade pretended that Ms. Pineda was a new employee with no knowledge of the work that she had performed for the previous seven years. *Id.* ¶ 35. And Ms. Finnblade and Ms. Root's heightened scrutiny of Ms. Pineda went on for several months. *Id.* ¶ 36. At this stage, the Court finds that Ms. Pineda's perception that she was being discriminated against because of her religion was reasonable.

Lerner fired Ms. Pineda approximately five months after she complained about perceived religious discrimination. *Id.* ¶ 50. And during these five months, Ms. Pineda alleges that she experienced continued and increased religious discrimination. The temporal proximity between Ms. Pineda's protected activity and her termination, combined with the ongoing discrimination that she faced after engaging in the protected activity, is sufficient for the Court to conclude that

Ms. Pineda has stated plausible claims for retaliation. *See Thomas v. City of Annapolis, Maryland*, 851 F. App'x 341, 350 (4th Cir. 2021) (explaining that "establishing a 'causal relationship' at the prima facie stage isn't an onerous burden," and noting that the Fourth Circuit "previously held that four months between the protected activity and adverse employment action is sufficient to establish a causal connection at the prima facie stage" (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)); *Lowman v. Maryland Aviation Admin.*, No. JKB-18-1146, 2019 WL 133267, at *8 (D. Md. Jan. 8, 2019) ("But, at the prima facie stage—and, even more so, at the motion to dismiss stage—establishing causation 'is not an onerous burden.'" (quoting *Strothers v. Laurel*, 895 F.3d 317, 335 (4th Cir. 2018)); *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where "temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." (internal quotation marks omitted)). Ms. Pineda's Lerner's Motion will be denied as to the retaliation counts.

### 3. FMLA Claims

Finally, Lerner moves to dismiss Ms. Pineda's FMLA claims. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). "Claims for violations of the prescriptive rights set forth in § 2612 are known as 'interference' or 'entitlement' claims." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 186 (4th Cir. 2017) (internal quotation marks omitted). The FMLA also "contains proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Id.* The retaliation provision states that "[i]t shall be unlawful for any employer to discharge or in any other

11

manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2).

To make out an FMLA interference claim, a plaintiff must demonstrate that (1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) the interference caused harm. *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Hannah P. v. Coats*, 916 F.3d 327, 347 (4th Cir. 2019). To establish a prima facie case of FMLA retaliation, a plaintiff must demonstrate that "(1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two events." *Id.* (quoting *Adams*, 789 F.3d at 429); *see also Waag*, 857 F.3d at 191; *Yashenko*, 446 F.3d at 546.

I agree with Lerner's argument that Ms. Pineda has not properly alleged an FMLA interference claim. *See* ECF No. 19-1 at 10. There are some facts supporting such a claim (for instance, Ms. Pineda alleges that her supervisors told her not to take FMLA leave on Fridays and otherwise tried to restrict her use of FMLA leave, ECF No. 18 ¶¶ 26-27). *See generally Dotson v. Pfizer, Inc.*, 558 F.3d 284, 297 (4th Cir. 2009) (holding that an employer's interference with even one day of FMLA leave is sufficient to entitle a plaintiff to damages). But Ms. Pineda does not allege that she was actually harmed by this interference with her FMLA rights. *See Avant v. S. Maryland Hosp., Inc.*, No. GJH-13-2989, 2015 WL 435011, at *11 (D. Md. Feb. 2, 2015) (explaining that an employer's mere interference with a plaintiff's exercise of her FMLA rights was insufficient to state a viable claim for FMLA interference; the plaintiff must also show that the employer's "interference with her FMLA rights somehow prejudiced her" (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)); *Wonasue v. Univ. of Maryland Alumni Ass'n*,

984 F. Supp. 2d 480, 497 (D. Md. 2013). Accordingly, the Motion will be granted as to the FMLA interference claim in Count III, and the claim will be dismissed without prejudice, with leave for Ms. Pineda to file an amended complaint within 14 days that properly asserts a claim for FMLA interference.

Lerner also argues that Ms. Pineda's FMLA retaliation claim must be dismissed. ECF No. 19-1 at 10-12. It argues that Ms. Pineda's Amended Complaint demonstrates that Ms. Pineda's insubordination on November 9, 2018, was the cause of her termination. *Id.* Of course, at the motion to dismiss stage the Court must view all facts and make all reasonable inferences in the light most favorable to Ms. Pineda. Ms. Pineda's complaint adequately alleges an FMLA retaliation claim. She alleges that she invoked her right to take FMLA leave and complained to Lerner's counsel when her supervisors questioned and criticized her use of the leave. She alleges that her supervisors' mistreatment of her FMLA leave requests continued until she was ultimately fired. Because Ms. Pineda's allegations raise a reasonable inference that Lerner retaliated against her for engaging in protected activity under the FMLA, Ms. Pineda has stated a plausible claim for FMLA retaliation. Lerner's Motion is denied as to this claim.

**IV.   Conclusion**

For these reasons, Lerner's Motion to Dismiss (ECF No. 19) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to Ms. Pineda's FMLA interference claim, which shall be dismissed without prejudice, with leave to file an amended complaint as to this claim within 14 days of the date of this Memorandum Opinion. Lerner shall file an answer or response to any amended complaint within 21 days of the date the amended complaint is filed. If no amended complaint is filed, Lerner shall file an answer within 21 days of the date of this Memorandum opinion.

Otherwise, the Motion is **DENIED**. The Court will issue a scheduling order separately. An accompanying Order follows.

<u>February 28, 2022</u>                                                  <u>     /s/          </u>
Date                                                                                          Timothy J. Sullivan
                                                                                               United States Magistrate Judge